PEOPLE v. COLLIER et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1910.)

WITNESSES (§ 318*)—CORROBORATION—MOTIVE IN TESTIFYING.

In a trial under an indictment for robbery, it was error to permit the people to corroborate the prosecuting witness by showing his sworn statement before a magistrate and a conversation with the prosecuting attorney respecting the prosecution, where no change in the prosecuting witness' motive in testifying was claimed.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1084, 1085; Dec. Dig. § 318.*]

Appeal from Kings County Court.

Alfred Collier, impleaded with John Carlson, was convicted of robbery, and he appeals. Reversed, and new trial ordered.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Thomas Kelby, for appellant.

Peter P. Smith (John F. Clarke, Dist. Atty., on the brief), for respondents.

THOMAS, J. Collier and Carlson were indicted for robbery in the first degree. The former, convicted, appeals.

Collier, Carlson, each 20 years of age, Burchard, 22, and O'Neil, 31 years old, participated in a transaction which was either a mere assault upon O'Neil, as the first two testified, or assault and robbery, as the last two testified. The evidence shows that Collier and Carlson were degenerates, and that Burchard was their associate. There is evidence that tends to show that O'Neil was their acquaintance and pursued their evil practices. After the theater, and a visit to a restaurant, O'Neil went to the junction of Flatbush avenue and Eastern Parkway, where Burchard, an alleged stranger, joined him, and the two walked up Eastern Parkway, meeting and passing Collier and Carlson without recognition, and later passing into a vacant lot, where one or both of them sat down, and thereupon Collier and Carlson came, and the three assaulted and robbed him. Burchard testified that he and his companions, acting upon the as-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sumption that O'Neil was a degenerate, arranged that Burchard should lead him into the lots and a compromising position, whereupon he should be robbed and be unable to complain without exposing his own infamy. Carlson and Collier insist that the affair was but the repulse of O'Neil's vile approaches. But O'Neil did cry out, either from the beating or the robbery, and Burchard and Carlson were arrested, and the next morning O'Neil swore to a complaint (Exhibit A), against the two and "an unknown person," whereupon the matter was adjourned to July 10th, when, complainant failing to appear, the defendants were discharged. Thereafter the indictment was found and trial had.

The evidence properly received was amply sufficient to sustain the conviction, and salutary sentence followed. But it is most unfortunate that evidence was received that demands reversal of the judgment. The prosecuting officer offered O'Neil's complaint before the magistrate for the purpose of showing "O'Neil's mental attitude" on June 29th, the morning following the offense; and Smith, assistant district attorney, was allowed to testify to a conversation with O'Neil on July 12th, wherein he complained of robbery by Burchard and Carlson and a third man unknown, and recited the history of his complaint before the magistrate and the reason of his failure to appear. O'Neil was also allowed to give this conversation. The evidence was ostensibly to show that O'Neil had, from the event forward, been consistent in his accusation, and had not fashioned falsely the charge to shield himself from arrest or reproach.

Respondents state the rule to be that:

. "Where the witness is charged with giving testimony under the influence of some motive prompting him to give a false or colored statement, it may be shown that he made similar declarations at a time when the imputed motive did not exist. So, in contradiction of evidence tending to show that the account of the transaction, given by the witness, is a fabrication of late date, it may be shown that the same account was given by him before its ultimate effect and operation arising from a change of circumstances could have been foreseen."

The defendant's counsel did not urge that O'Neil's motive for his testimony had changed, but that he was from the first moved by the motive of shielding his own base practice by accusing his associates; nor is there any change of circumstances that he could not have foreseen. If this complaining witness may on the trial corroborate himself by his sworn statement before the magistrate and his conversation with the prosecuting officer, the same method of fortifying testimony is open to all witnesses similarly declaring themselves preparatory for trial. We find nothing excusatory of this evidence, and deprecate its presence in the record, as it interrupts the course of justice.

We are not unmindful of the offer of the prosecution to introduce evidence to impeach witnesses respecting collateral matters developed upon cross-examination. The court excluded or struck out the answers. The questions are not legally defensible, and their asking was possibly injurious to the defendants. No person is so morally depraved or so deserving of punishment as to merit conviction by means of forbidden evidence, or its attempted introduction. This court has

the power and intention to correct any hurtful results that may appear to have arisen therefrom.

For the errors in the reception of evidence, as already noticed, the judgment should be reversed, and a new trial ordered.   All concur.